IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS D. GOLD, | ) |
|       Plaintiff, | ) |
| v. | ) Civil Action No. 1:08-cv-207-SJM |
| METZ LEWIS LAW FIRM, LLC, *et al.*, | ) |
|       Defendants. | ) |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., District J.,

Presently pending in this civil action are several motions to dismiss the Plaintiff's Second Amended Complaint. This is the third time that the Plaintiff has proffered a complaint in this case and the third time that the "Moving Defendants"[1] have challenged the legal viability of his claims. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331. For the reasons that follow, the motions to dismiss will be granted.

## I. BACKGROUND

This litigation arises out of a business-related dispute primarily between Plaintiff Dennis D. Gold and Defendant John Frey relative to their involvement in a limited liability corporation known as Slurry Technologies Operating, LLC ("STO"). Both Plaintiff and Frey were principal employees of STO, and the company was owned jointly

---

[1] Separate motions to dismiss have been filed by three groups of Defendants, *to wit*: Metz Lewis Law Firm, LLC, Steven Petrikis, Esq., Michael P. Robic II, Esq., and Leroy L. Metz II, Esq. (collectively, the "Metz Lewis Defendants"); the Paquin Company and James Hicks; and John and Elaine Frey (collectively, the "Frey Defendants"). It appears from the docket that no proof of service has yet been filed by the Plaintiff as to either Defendant Keith Marshall or Defendant Darl E Weckerly.

by their respective spouses, with Plaintiff's wife apparently holding a controlling interest.

According to the Second Amended Complaint, Plaintiff is the owner of certain patents relating to handling equipment of industrial slurries. (Second Amended Complaint ("SAC") at ¶ 13.) Plaintiff permitted the use of his patented technology to STO and, over the course of five years in the market, he earned royalties on these patents in excess of $500,000 through his business relations with STO and other companies. (*Id*. at ¶¶ 13, 15.)

It is alleged that, "on or about March of 2002," following Defendant John Frey's termination of employment with STO, the Defendants "stole certain documents and other property relating to the patents from the offices of STO" for the purpose of causing the Plaintiff personal harm and destroying his royalty earning potential as well as his market position. (SAC at ¶¶ 15-16.) Further, Defendants Metz Lewis, Petrikis, Robie, Metz, Marshall, Hicks, Paquin, Weckerly, and Elaine Frey allegedly "conspired with John Frey in the theft of the document[s], through malicious actions against the [Plaintiff],[2] and the subsequent cover-up and influencing of investigating officers and the local district attorney." (*Id*. at ¶ 17.)

Plaintiff claims that "Frey and other parties transported the stolen property across state lines into Ohio, with the intent of exposing/offering them to The Phoenix Processing Company, a competitor of STO[,] and destroying [Plaintiff's] earning potential of [sic] the market place." (SAC at ¶ 18.) Finally, it is alleged that "Defendants Hicks, Paquin, Weckerly, and John and Elaine Frey each had signed confidentiality agreements regarding the stolen documents." (*Id*. at ¶ 19.)

Based on the foregoing allegations, the Plaintiff has asserted two causes of action in his Second Amended Complaint. Count I asserts a claim under the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C.A. §§1961 *et seq*. as

---

[2] Although the Second Amended Complaint references "malicious actions against the defendant," we assume this is a typographical error and the intended reference is to the plaintiff.

against all Defendants.  Count II asserts a state law breach of contract claim as against Defendants Metz Lewis, Hicks, Paquin, Weckerly, John Frey, and Elaine Frey.

Defendants have moved to dismiss these claims pursuant to both Fed. R. Civ. P. 12(b)(1), based on the Plaintiff's alleged lack of standing to assert his claims, and Fed. R. Civ. P. 12(b)(6), based on the alleged failure of the Second Amended Complaint to state a claim for which relief may be granted.  Because I find the second basis for dismissal to be dispositive, I need not consider the first.

## II.  STANDARD OF REVIEW

In determining whether the dismissal of a complaint is appropriate pursuant to Fed. R. Civ. P. 12(b)(6), we must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  *LaPosta v. Borough of Roseland*, 309 Fed. Appx. 598, 600, 2009 WL 274156 at \*\*2  (3d Cir. Feb. 3, 2009) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008)).  *See also Pinker v. Roche Holdings Ltd*., 292 F.3d 361, 374 n. 7 (3d Cir.2002).  A plaintiff must allege in his complaint "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element[s]" of a cause of action.  *Phillips,* 515 F.3d at 234 (quoting *Bell Atlantic Corp. v. Twombly*,  550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).  *See LaPosta*, 309 Fed. Appx. at 600, 2009 WL 274156 at \*\*2.

Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Bates v. Paul Kimball Hosp*., No. 09-2338, 2009 WL 3041989 at \*1 (3d Cir. Sept. 24, 2009) (quoting *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).  This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Chen v. Township Of Fairfield*, No. 08-3635, 2009 WL 4298297 at \*2 (3d Cir.  Dec. 2, 2009) (quoting *Ashcroft v. Iqbal*, — U.S. at —, 129 S.

Ct. at 1949). "Factual allegations must be enough to raise a right to relief above the speculative level...." *Id*. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555).

Here, the Plaintiff is proceeding *pro se* and his complaint is therefore held to a less stringent standard than that which applies to formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, in judging the sufficiency of his complaint, the Court must read the Plaintiff's submissions generously and construe formally imperfect filings in accordance with his substantive intent. *See id; Winslow v. The Borough of Malvern Pennsylvania*, Civil Action No. 08-1890, 2009 WL 4609590 at *2 (E.D. Pa. Dec. 7, 2009).

### III. DISCUSSION

A. Plaintiff's RICO Claim

In his first count, Plaintiff asserts a claim for alleged violations of 18 U.S.C.A. §§ 1962(c) and (d), which provide that:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt[;] [and]
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

The Moving Defendants contend that Count I is legally untenable because the allegations in the Second Amended Complaint fail to assert all of the necessary elements of a RICO claim. I agree.[3]

A claim alleging a pattern of racketeering under § 1962(c) requires proof of four elements: (1) the existence of an enterprise engaged in or affecting interstate

---

[3] The Moving Defendants also contend that the Plaintiff's RICO claim is barred by the applicable four-year statute of limitations. I need not address this possible basis for dismissal under Fed. R. Civ. P. 12(b)(6) and will confine my analysis to the insufficiency of the Plaintiff's RICO allegations.

commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, directly or indirectly, in the conduct or affairs of the enterprise; and (4) that the defendant participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts.  *Munsif v. Cassel*, 331 Fed. Appx. 954, 958, 2009 WL 1316088 at \*\*3 (3d Cir. Mar. 24, 2009) (citing *Annulli v. Panikkar*, 200 F.3d 189, 198 (3d Cir. 1999)).  Assuming for the moment that the first three elements have been sufficiently pled,[4] I nevertheless conclude that the Second Amended Complaint fails to state a viable claim under § 1962(c) in that the allegations fail to establish the fourth element – *to wit*, that the Defendants participated in the affairs of the "enterprise" *through a pattern of racketeering activity*.

Under the RICO Act, "racketeering activity" is defined in terms of certain enumerated federal or state law offenses.  18 U.S.C.A. § 1961(1).  A "pattern of racketeering activity" is defined as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."  *Id*. at § 1961(5).

Here, the alleged acts of racketeering, as set forth in the Second Amended Complaint, are:

---

[4] It is not clear that the Second Amended Complaint adequately alleges the existence of an "enterprise."  Under the RICO Act, an "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  *Id.* at § 1961(4).  The Second Amended Complaint does not alleged the existence of any specific "enterprise."  It does allege, however, that "[a]ll Defendants are persons or entities engaged in interstate commerce or in activities which affect interstate commerce" (SAC at ¶ 21) and that the Defendants "conducted and participated, directly or indirectly, in the conduct of the affairs of John Frey through a pattern of racketeering activity in violation of 18 U.S.C. § 1862(c)."  (SAC at ¶ 22.)  It is possible, therefore, that the Plaintiff intended to name John Frey himself as the relevant "enterprise" or, alternatively, that he intended to name all of the Defendants (*i.e.*, a "group of individuals associated in fact") as the relevant enterprise.  For present purposes I will assume *arguendo* that such allegations are sufficient at the pleading stage.

5

      1)      Transportation of stolen goods in violation of 18 U.S.C. § 2314;

      2)      Sale or receipt of stolen goods in violation of 18 U.S.C. § 2315;

      3)      Engaging in frauds and swindles in violation of 18 U.S.C. § 1341;

      4)      Wire fraud in violation of 18 U.S.C. § 1343.

(SAC at ¶ 25.) However, the Second Amended Complaint is utterly devoid of any factual averments to support the existence of these supposed racketeering activities.

      Giving the Plaintiff's most recent complaint the benefit of the most favorable construction, it appears that all of the alleged acts of racketeering stem from the falling out which occurred between the Plaintiff and Defendant John Frey over their failed venture in STO. Because the allegations in the Second Amended Complaint are sparse, I have sought to obtain clarification of the Plaintiff's RICO theory by resort to his other submissions. Among other things, I consider the factual averments in his prior complaints (Docs. [1] and [16]) as well as the "Preamble" he submitted in connection with his original complaint [1-4]. I also consider his brief in opposition to the present pending motions [41] as well as the factual averments he offered at the oral argument held on March 23, 2009. Collectively, the following relevant facts can be gleaned.

      Plaintiff has alleged that, while he was employed at STO, Defendant Frey mishandled one particular contract (and submitted false financial reports in connection with that project), costing STO hundreds of thousands of dollars. After that debacle and while the Plaintiff was in the midst of securing another contract for STO, Frey quit his employment with the company. Plaintiff contends that, thereafter, Frey gained access to the company's offices and copied from STO's computer system sensitive technical and proprietary information belonging to STO and/or the Plaintiff and relating (at least in part) to the Plaintiff's patents.[5]

---

[5] Plaintiff's "Preamble" states that the stolen information included "corporate records of [STO's] sales, market plans, bill material, and cost of construction, notes with customers, and proprietary engineering drawings and copyrighted documents." (Preamble to Complaint [4-1] at p. 3 of 5.)

It is further alleged that Defendant Frey and/or the other Defendants then shared the stolen information with other third parties, including competitors of STO, in breach of certain confidentiality agreements between STO and its employees and suppliers. More specifically, Plaintiff has alleged that Defendant John Frey took the stolen information to Louisville, Kentucky for the purpose of selling it to the Phoenix Process Company for personal gain. Plaintiff learned of the alleged theft when the information was inadvertently left in a Bob Evans restaurant in Louisville and staff at the restaurant contacted STO to notify the company of the documents' whereabouts.

Following the termination of Defendant John Frey from his position with STO, Frey demanded a settlement payment as compensation for his capital contributions to the company. The dispute between Plaintiff and the Freys over what would constitute a fair and equitable settlement payment spawned separate litigation which has been pending in state court in Venango County, Pennsylvania, since roughly 2002.

After the Plaintiff discovered that Defendant John Frey had acquired sensitive proprietary information from the offices of STO, Plaintiff sought return of the same. The matter was addressed by the Venango County judge presiding over the pending state court litigation, but there remains to this day a dispute over whether Plaintiff has received a full and accurate copy of all the information which he believes was stolen from the STO offices. According to the Plaintiff, certain Defendants, including the Metz Lewis Law Firm, have stonewalled his attempts to recover this misappropriated information.

In the meantime Plaintiff sought, unsuccessfully, to have Defendant John Frey prosecuted for the alleged theft. Law enforcement agencies on both the local and federal level have declined to pursue the matter. Plaintiff avers that this is the result of dishonest and/or unethical conduct by certain of the Defendants, including the Metz Lewis Law Firm, which had intervened in the Plaintiff's attempts to pursue relief through the criminal justice system.

Plaintiff contends that, as a result of Defendant John Frey's malfeasance in his

responsibilities while employed by STO, along with Frey's alleged tortious conduct in misappropriating and disseminating sensitive technical and/or proprietary information, Plaintiff's earnings and market position have suffered greatly, and he has also been saddled with significant debts on personal guarantees that he was required to issue in connection with STO's business endeavors.  His Second Amended Complaint avers that "Plaintiff has been injured by loss of patent royalties due him and future royalty ear[n]ings, and defamation of character of the Plaintiff and his business and property as a result of Defendants' actions."  (SAC at ¶ 26.)

Construing all of the foregoing in the light most favorable to the Plaintiff, it appears that the alleged acts of transportation, sale and/or receipt of stolen goods pertains to Defendant John Frey's alleged acts of acquiring and/or disseminating sensitive proprietary and/or patent-related information to which he was not entitled. According to the Second Amended Complaint, "Defendants stole certain documents and other property relating to the [Plaintiff's] patents from the offices of STO" in March of 2002.  (SAC at ¶ 16.)  Fundamentally, Plaintiff is complaining about conduct which may be unlawful under civil tort law principles and/or federal patent law, but which is not indictable under the federal criminal laws in question.  *See* 18 U.S.C.A. §1961(1)(B) (defining "racketeering activity" as conduct which is indictable under any one of various enumerated federal criminal statutes).  Notably, the federal criminal statutes which the Plaintiff cites as relevant "racketeering activity" concern the interstate transportation of stolen "*goods, wares, or merchandise, securities, or money*," *see* 18 U.S.C.A. §§ 2314 and 2315 – conduct which, ostensibly, is not implicated here.

Moreover, even assuming for the sake of argument that this alleged conduct could constitute action which is indictable under §§2314 and 2315 (relating to interstate transportation of stolen property), it still fails to establish a *pattern* of racketeering activity.  "To plead a pattern of racketeering activity, a plaintiff must aver, among other things, that each defendant committed at least two acts of prohibited racketeering activity, and that the predicate acts amount to or pose a threat of continued criminal

8

activity." *Munsif v. Cassel*, 331 Fed. Appx. 954, 958, 2009 WL 1316088 at ** 3 (3d Cir. May 13, 2009) (citing *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240 (1989)).

Not only does the Second Amended Complaint fail to spell out the precise involvement or conduct by each of the Defendants which could constitute an act of racketeering, it also fails to allege any threat of continued criminal activity. At best, the alleged racketeering activity amounts to discreet, prior misconduct which has already caused the Plaintiff significant financial harm and which, based on the Plaintiff's averments, is not likely to be repeated again in the future. *See Munsif*, 331 Fed. Appx. at 958, 2009 WL 1316088 at ** 3 (when allegations of the complaint, taken as true, do not support the existence of either long-term criminal conduct or the threat thereof, dismissal is appropriate) (citing *Marshall-Silver Constr. Co. v. Mendel*, 894 F.2d 593, 598 (3d Cir. 1990)); *Hollis-Arrington v. PHH Mortgage Corp.*, 205 Fed. Appx. 48, 54, 2006 WL 3078935 at **4 (3d Cir. Oct. 31, 2006) ("A short term scheme threatening no future criminal activity will not suffice.") (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir. 1991)). *See also Zahl v. New Jersey Dept. of Law and Public Safety*, Civil Action NO. 06-3749 (JLL), 2009 WL 806540 at *8 (D.N.J. March 27, 2009) (noting that "[c]ourts have found the threat of continued criminal activity to be remote when a successful closed-ended scheme had only one victim"...).

Plaintiff has also alleged racketeering activity in the nature of mail and/or wire fraud in violation of 18 U.S.C.A. §§ 1341 and 1343. The factual basis for these alleged racketeering acts is less clear; however, that which is discernible from the record fails to satisfy the standards applicable under Fed. R. Civ. P. 12(b)(6).

The elements of mail fraud under § 1341 include: "(1) a scheme to defraud; (2) use of the mails to further that scheme; and (3) fraudulent intent." *U.S. v. Jimenez*, 513 F.3d 62, 81 (3d Cir. 2008) (quoting *United States v. Pharis*, 298 F.3d 228, 234 (3d Cir.2002)). In his original complaint, Plaintiff asserted a count of "U.S. Postal Service Mail Fraud" premised on the allegation that:

9

> Defendants Michael P. Robic Esquire, Steven Petrikis Esquire, and the Firm of Metz Lewis Law committed fraud by the U.S. Postal service, when making demands by United States Postal Service, for information which they had no legal basis to have possession of without court order.  Rather than seek a court order for the information the Plaintiff refused to surrender, defendants attempted to gain possession of property by making legal threats delivered by the U.S. mail service.

(Pl.'s Complaint [1-2] at ¶ 12.)  Such alleged conduct manifestly does not rise to the level of an indictable § 1341 offense, as it involves no scheme to defraud.

As for the alleged acts of wire fraud, the Plaintiff suggests in his brief in opposition that, through his receipt of discovery in the pending state court litigation, he discovered notes of telephone conversations between Defendants John and Elaine Frey and Defendants James Hicks and the Paquin Company whereby the latter conveyed to the Freys proprietary information belonging to Plaintiff and/or STO.  (*See* Pl.'s Br. in Opp. [41] at p. 4; *see also* Pl.'s Preamble to Complaint [1-4] at p. 2 ("Additionally, Jim Hicks of the Paquin Company would visit the office[,] ask question[s] of employees and Gold[,] then later report by phone the conversation to Frey.").)  In essence, Plaintiff accuses Jim Hicks of conducting corporate espionage and sharing the benefits of that espionage with the Frey Defendants.

Like the mail fraud statute, the wire fraud statute requires the existence of a "scheme to defraud," *see* 18 U.S.C.A. § 1343, and Plaintiff's allegations of corporate espionage fail to allege such a scheme.  As one court has observed, "[n]ot all conduct that strikes a court as sharp dealing or unethical conduct is a 'scheme or artifice to defraud.'"  *Reynolds v. East Dyer Development Co.*, 882 F.2d 1249, 1252 (7th Cir. 1989) (citation omitted).  Rather, "a scheme to defraud, for purposes of the mail and wire fraud statutes, 'must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *United States v. Fumo*, 2009 WL 1688482 at *13 n. 7 (E.D. Pa. June 17, 2009) (quoting *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 528 (3d Cir. 1998)). Plaintiff's Second Amended Complaint and related filings fail to allege such conduct.

However, even assuming that the Second Amended Complaint (read in light of the Plaintiff's various factual assertions) sufficiently alleges predicate acts of mail or wire fraud, the § 1962(c) claim must fail because, again, Plaintiff's averments fail to establish *a pattern of racketeering activity*. Here, the alleged acts of mail and/or wire fraud involved, at most, a discreet close-ended scheme which is incapable of repetition in the future; Plaintiff has failed to aver predicate acts which "amount to or pose a threat of continued criminal activity." *Munsif v. Cassel*, 331 Fed. Appx. at 958, 2009 WL 1316088 at **3. *See also Hollis-Arrington v. PHH Mortgage Crop.*, 205 Fed. Appx. at 54, 2006 WL 3078935 at **4; *Kehr Packages, inc.*, 926 F.2d at 1412; *Marshall-Silver Constr. Co.*, 894 F.2d at 598; *Zahl*, 2009 WL 806540 at *8.

Because the Plaintiff is proceeding *pro se*, I have construed the Second Amended Complaint liberally and, for purposes of clarification, I have considered his RICO claim in light of the relevant factual averments set forth in: (i) the Plaintiff's original and First Amended Complaints; (ii) the "Preamble" to his original complaint, (iii) his brief in opposition to the pending motions to dismiss; and (iv) his statements at oral argument. Notwithstanding my liberal reading of the Second Amended Complaint, I conclude that the allegations fail to assert a viable claim under 18 U.S.C.A. § 1962(c) for which relief may be granted. Accordingly, that claim will be dismissed.

This conclusion further compels the dismissal of the Plaintiff's conspiracy claim under 18 U.S.C.A. § 1962(d), for it is well established that "[a]ny claim under section 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Magnum v. Archdiocese of Philadelphia*, 253 Fed. Appx. 224, 229, 2007 WL 3257209 at **5 (3d Cir. Nov. 6, 2007) (alteration in the original) (quoting *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1192 (3d Cir. 1993). *See also Lum v. Bank of America*, 361 F.3d 217, 227 n. 5 (3d Cir. 2004). Accordingly, Plaintiff's RICO claim under § 1962(d) will likewise be

dismissed.[6]

B.     Plaintiff's Breach of Contract Claim

Plaintiff's only other claim in the Second Amended Complaint is a state law cause of action against Defendants Steven Petrikis, Metz Lewis Law Firm LLC, Hicks, Paquin, Weckerly and John and Elaine Frey for breach of contract. This count is premised on the respective Defendants' alleged misconduct in breaching the terms of the confidentiality agreements to which they were allegedly parties.

As the parties here are not diverse for purposes of 28 U.S.C. § 1332, the Court's sole basis of jurisdiction over this claim is 28 U.S.C. § 1367, which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so

---

[6] Because the facts, as alleged by Plaintiff, do not (and cannot) give rise to a viable RICO claim, I will grant the Defendants' motion to dismiss, rather than permit any further amendment which, in my opinion, would be futile. *See Hollis-Arrington*, 205 Fed. Appx. at 55, 2006 WL 3078935 at **5 (district court did not abuse its discretion in denying Rule 15(a) motion to amend as futile because plaintiff's old and new claims would not survive a renewed motion to dismiss under Rule 12(b)(6)).

Moreover, the RICO claim will dismissed as against the presently unserved Defendants, Keith Marshall and Darl E. Weckerly, who have not yet made an appearance and therefore have not responded to the Amended Complaint. Because Plaintiff is proceeding *in forma pauperis*, he was entitled to have the summons and complaint served for him. *See* Fed. R. Civ. P. 4(c)(3). Through no fault of the Plaintiff, such service has not yet been made on Marshall and Weckerly; yet the RICO claim against them must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), as it fails to state a cognizable basis for legal relief. *See Lewal v. Wiley*, 29 Fed. Appx. 26, 29 2002 WL 24126 at **2 (2d Cir. Jan. 4, 2002) (noting that 28 U.S.C. § 1915(e)(2)(B)(ii) mandates dismissal of a meritless action prior to service of process). *Accord Sims v. Ohio Casualty Ins. Co.,* 151 Fed. Appx. 433, 437, 2005 WL 2508567 at ** 3 (6th Cir. Oct. 11, 2005) (court of appeals, after affirming the dismissal of plaintiffs' RICO claim as time-barred, would not remand the matter for further proceedings against unserved defendants; court noted, among other things, that unserved defendants would be "entitled to raise the arguments advanced by the other defendants in this case, namely that the plaintiffs' RICO claims were barred by the statute of limitations"); *Farmer v. Perrill*, 275 F.3d 958, 960 n.2 (10th Cir. 2001) (it is permissible to extend a judgment of dismissal to unserved defendants when the claims against those defendants are barred) (cited by *Craig v. United States*, 340 Fed. Appx. 471, 472 n.1, 2009 WL 2392922 at **1 n.1 (10th Cir. Aug. 5, 2009)).

related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  A district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." *Id*. at § 1367(c)(3).  *See  Elkadrawy v. Vanguard Group, Inc.*, 584 F.3d 169, 174 (3d Cir. 2009) (once the District Court dismissed the plaintiff's federal claims, leaving only the state claim, the prerequisites for § 1367(c)(3) were met).  Accordingly, this Court declines to exercise supplemental jurisdiction over the remaining breach of contract claim and that cause of action will be dismissed without prejudice.

## IV.  CONCLUSION

Based upon the foregoing reasons, the Plaintiff's claim under the RICO act will be dismissed with prejudice.  Th Plaintiff's state law breach of contract claim will be dismissed without prejudice.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS D. GOLD, | ) |
|       Plaintiff, | ) |
| v. | ) Civil Action No. 1:08-cv-207-SJM |
| METZ LEWIS LAW FIRM, LLC, *et al.*, | ) |
|       Defendants. | ) |

**O R D E R**

AND NOW, *to wit*, this 17th day of February, 2010, upon consideration of the Metz Lewis Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [32], the Motion to Dismiss Plaintiff's Second Amended Complaint by Defendants The Paquin Company and James Hicks [36], and Defendants John and H. Elaine Frey's Motion to Dismiss Plaintiff's Second Amended Complaint [38],

IT IS ORDERED, for the reasons set forth in the accompanying Memorandum Opinion, that said motions be, and hereby are, GRANTED as follows:

1. The Plaintiff's RICO claim under Count I of the Amended Complaint is DISMISSED with prejudice; and

2. The Plaintiff's state law breach of contract claim under Count II of the Amended Complaint is DISMISSED without prejudice.

IT IS SO ORDERED.

                                            s/    Sean J. McLaughlin
                                                  SEAN J. McLAUGHLIN
                                                  United States District Judge

cm: All parties of record.